UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FABRICIO ISMAEL CAJAMARCA-JANZA,<br><br>                    Petitioner,<br><br>          v.<br><br>LUIS SOTO, in his official capacity as Director/Warden of Delaney Hall Detention Facility; ARTHUR WILSON, in his official capacity as Interim Acting Field Office Director for the Newark Field Office for Immigration and Customs Enforcement; DAVID VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as Acting U.S. Attorney General,<br><br>                    Respondents. | **MEMORANDUM & ORDER**<br>26-CV-3066 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

On May 13, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner Fabricio Ismael Cajamarca-Janza in Queens, New York, after ICE agents encountered him entering his car.  Petitioner was first detained at the Delaney Hall Detention Center in Newark, New Jersey, before he was transferred to the Metropolitan Detention Center in Brooklyn ("MDC") where he remains detained.  He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.[1]  For the reasons that follow, his Petition is GRANTED.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Petitioner is a native of Ecuador, ECF No. 10-1 ¶ 1 (Declaration of Supervisory and Deportation Officer Cuni), who entered the United States without inspection or admission on or about September 18, 2020, *see* ECF No. 1 ¶ 20.  After his first entry, Petitioner was "removed or otherwise turned back to Mexico in or around December 2020, attempted re-entry in April 2021, was again removed or turned back to Mexico, and ultimately re-entered the United States in April 2021." *Id.* ¶ 21.  In the time between his initial entry and most recent re-entry, Petitioner was encountered in the United States "six additional times" following his return to Mexico. *See* ECF No. 10 at 2.  Since about April 2021, Petitioner has lived in New York where he resides with and supports his seventeen-year-old brother and fifty-six-year-old incapacitated father. ECF No. 1 ¶¶ 19, 21.  In May 2026, Petitioner began working after two months of unemployment. *Id.* ¶ 22.

On May 13, 2026, while conducting surveillance at Petitioner's place of work, ICE officers found an unoccupied vehicle registered to Petitioner with an address in Virginia. *See* ECF No. 10-1 ¶ 14.  After confirming that Petitioner was "a foreign national with no record of lawful entry," the officers "executed a Form I-200 for Petitioner's arrest." *Id.*  After Petitioner entered his vehicle, "three ICE vehicles surrounded his car" and officers "broke the window of his vehicle and dragged him out" without providing a warrant, identifying any individualized basis for his seizure, or questioning him.  ECF No. 1 ¶ 23.[3]

---

[2]    The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

[3]    The government asserts only that "[officers] approached Petitioner, clearly displaying [their] badges" and, after asking "a series of pedigree questions" and "conduct[ing] a field

Petitioner initiated an action on May 18, 2026, by filing a petition for a writ of habeas corpus in the District of New Jersey.  *See* ECF No. 1 ("Petition").  The next day, Petitioner and the government filed a Consent Motion to Transfer Venue to this District, because the government informed Petitioner's counsel that Petitioner was detained at the MDC at the time his Petition was filed.  ECF No. 6 ¶ 2.  The case was transferred to the undersigned on May 21, 2026, *see* May 21, 2026, Text Order, and, that same day, the Court issued two Orders to Show Cause.  First, directing the government to "show cause why the Petition should not be granted, and why Respondents should not be ordered to immediately release Petitioner from detention." *See* May 21, 2026, Text Order.  And second, directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226."  *See* May 24, 2026, Text Order.

The government filed its response on May 26, 2026, *see* ECF No. 10 ("Response"), in which it indicated its position that the Petition "should be denied" because "8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing" an individualized custody determination and ICE "complied with the requirements of a detention pursuant to 8 U.S.C § 1226(a)."  ECF No. 10 at 1, 3–4.  The government also noted that "Petitioner has already appeared before an immigration judge" and that "his next appearance is June 3, 2026."  ECF No. 10 at 2.[4]

## **LEGAL STANDARD**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."  *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*,

---

interview[,] . . . subsequently arrested Petitioner pursuant to the Form I-200" that had been executed earlier.  *See* ECF No. 10-1 ¶ 15.

[4]      Petitioner did not file a reply.

136 F.4th 382, 393 (2d Cir. 2025).  A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).  There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who entered the United States without inspection and admission and were not apprehended at or near the border at the time of entry.  2026 WL 1146044, at *2.

Regardless of the statutory basis for detention, *Mathews v. Eldridge*, 424 U.S. 319 (1976), sets forth the test for determining whether ICE's detention of Petitioner violates his due process rights.  *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying the *Mathews* test in the context of civil immigration confinement).  Under that test, the Court must balance:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

**DISCUSSION**

Petitioner seeks habeas release based on:  (1) ICE's detaining him "without notice, without an opportunity to respond, and without meaningful evaluation as to his particular circumstances, including whether he posed a flight risk or a danger to the community" and (2) ICE's failure to offer "any individualized purpose for Petitioner's detention," among other claims.[5]  *See* ECF No. 1 ¶¶ 57–64.  The government argues that it is detaining Petitioner pursuant to 8 U.S.C. § 1226(a).  ECF No. 10 at 1, 2.  In the government's view, they have complied with the statutory requirements of that section because "ICE conducted an initial custody determination, which included an interview and other assessments" before "detain[ing] Petitioner after determining that he was a flight risk based on his eight illegal entries into the United States, his inconsistent identification of his address . . . and his concomitant lack of community ties."  *Id.* at 4.

At bottom, the primary question is whether the government's detention of Petitioner violates his due process rights.  Accordingly, the Court applies the *Mathews* test.  *See Velasco Lopez*, 978 F.3d at 851.

Here, there is no question that Petitioner's interest in "being free from imprisonment" is "the most significant liberty interest there is."  *Id.*  Therefore, the Court's inquiry turns on "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.

On that point, the record demonstrates that not only was the risk of erroneous deprivation of Petitioner's liberty interest high, it has already happened.

---

[5]    The Court need not address Petitioner's other claims, given its conclusion that Petitioner's initial custody determination under 8 U.S.C. § 1226(a) was procedurally deficient, in violation of the Due Process Clause of the Fifth Amendment.

5

## I.    ICE's Initial Custody Determination was Inadequate

The government asserts that it "complied with the requirements of a detention pursuant to 8 U.S.C. § 1226(a)" and, although it sets forth the correct statutory requirements of such detention, *see* ECF No. 10 at 3–4, it fails to demonstrate that these requirements were met with respect to Petitioner.

Section 1226(a) provides, in relevant part, that:

> . . . an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole

8 U.S.C. § 1226(a).  In practice, the statute affords Petitioner an initial custody determination before or contemporaneous with discretionary detention that "entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk." *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (citing 8 C.F.R. §§ 1003.19(a), (f), 1236.1(d)(1));[6] *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (noting "judges have interpreted [Section 1226(a)] this way: before or contemporaneous with detaining a noncitizen, there must be a custody determination" and collecting cases); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) ("[B]efore the Government may exercise such discretion to detain a

---

[6]    The Court appreciates that the discussion of the initial custody determination in *Pastrana-Beltran* was part of an alternative holding.  However, the rationale applies here where detention concerns Section 1226(a) from the outset.

person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.").

The government states it "elected to detain Petitioner after determining that he was a flight risk based on his eight illegal entries . . . , his inconsistent identification of his address . . . and his concomitant lack of community ties." ECF No. 10 at 4. Rather than engaging with that position, the government instead pivots to argue that the Court is jurisdictionally bar[red] [] from reviewing that determination." *Id.* While the government is correct that "Section 1226(e) provides that '[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review,'" ECF No. 10 at 3, "that is not the Court's inquiry here," *Pastrana-Beltran*, 2026 WL 1398609, at *3. "Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." *Pastrana-Beltran*, 2026 WL 1398609, at *3 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). In this case, the Court's assessment of "whether and how correct procedures were applied" leads it to the inescapable conclusion that, with respect to Petitioner's initial custody determination, the relevant procedures were, at the very least, "applied erroneously." *Id.*

Here, the government concedes that Petitioner "established that he/she does not pose a danger to persons or property." ECF No. 10-7 at 2 (INA § 236(a) Initial Custody Determination Form, Exhibit F to the government's Response). However, the remainder of the initial custody form demonstrates that the government's initial determination does not comport with the minimum assessment Section 1226(a) requires. Specifically, in the section of the custody form titled "Flight Risk," the officer marked "No," next to the question: "Has the individual

established that he/she does not pose a flight risk?" *Id.* at 3.  The officer provided two reasons: (1) "Subject has no ties to community, no permanent address" and (2)  Petitioner "illegally entered the United States, failed to alert DHS of his presence, and failed to comply with the Alien Registration Act." *Id.*  Both of these purported "reasons" are flawed and could therefore not properly undergird ICE's determination under Section 1226(a).

The officer's first "reason"—that Petitioner "has no ties to [the] community [and] no permanent address"—is contradicted by the record.  The record is clear that Petitioner does, in fact, have immediate family and ties to the community given that he "supports his disabled father and minor brother," the former of whom "has no other adult in the household capable of providing for him."  ECF No. 1 ¶¶ 27, 29.  Whether the officer knew of this fact and omitted it or failed to discover it in his assessment of whether Petitioner could demonstrate that he is not a flight risk is immaterial, because the record shows that the initial custody form failed to appreciate that during his post-arrest interview, Petitioner identified family members, but failed only to identify "family members *with legal status* in the United States."  ECF No. 10-1 ¶ 17 (emphasis added).  By failing to contest Petitioner's assertion that he cares for his father and brother and, instead, adding the "legal status" qualifier to its submissions to the Court, the government effectively concedes that Petitioner did tell them about his family in the community.[7]  This means that ICE either erroneously failed to include that information in the initial custody determination form or the government omitted facts to fit a pre-determined

---

[7]    The Court ordered the government to file "any records, documents, or other information in Petitioner's immigration file," May 21, 2026, Text Order, but the government did not provide a Form I-213 in its submission, which the Court understands would include a complete picture of Petitioner's relevant family information.

narrative that Petitioner was a flight risk.[8]  Either way, the initial determination here amounts to a violation of due process.  The government's after-the-fact addition of the "legal status" qualifier only makes matters worse.  To start, the government does not articulate why or how the legal status of Petitioner's family members matters for the sake of assessing his ties to the community.  Nor could it—the legal status of Petitioner's father and brother says nothing about Petitioner's ties to them or the community.  The fact that Petitioner has family in the community, in and of itself, speaks to his ties.  Next, this sort of reasoning constitutes the same *per se* determination that this Court and others have already rejected as "constitutionally untenable." *See, e.g.*, *Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026); *Pastrana-Beltran*, 2026 WL 1398609, at *2.  And, worse still, the government's reliance on its "legal status" qualifier as a post-hoc justification for the process Petitioner received, if accepted, effectively creates a no-win situation for noncitizens writ large.  Not only is this not sufficiently individualized for purposes of Section 1226(a), but if taken to its logical conclusion, permitting ICE to erase what otherwise would be clear familial ties to the community by slapping on its "legal status" qualifier, allows it to grant itself license to ignore the facts that do not fit its desired outcome.  The Court has already found that using a catch-22 to create a "heads-I-win-tails-you-lose scenario" violates due process.  *Quille*, 2026 WL 1453889, at *4.  The result is no different here.

---

[8]    In its Response, the government similarly relies on its assertion that "ICE elected to detain Petitioner after determining that he was a flight risk based on his eight illegal entries into the United States."  ECF No. 10 at 4.  Despite the crucial role this assertion plays in the government's Response, it is conspicuously absent in the initial custody determination form. The form includes only a perfunctory statement that Petitioner "illegally entered the United States."  *See* ECF No. 10-7 at 3.  As was the case with the "legal status" qualifier, the government again attempts to supplement the initial custody determination form after the fact. This is inconsistent with the sort of contemporaneous assessment required under Section 1226(a).

The government's failure to include accurate information on the initial custody form demonstrates that Petitioner was effectively foreclosed from an opportunity to "demonstrate to the satisfaction of the officer" that he was not a flight risk.  *See Gopie*, 2025 WL 3167130, at *2. Regardless of whether the government did not accurately record the truth, omitted the truth for the sake of achieving a pre-determined outcome, or manipulated the truth for the sake of that outcome, under any of those scenarios, Petitioner was not afforded due process.

Second, the statement that Petitioner had "illegally entered the United States, failed to alert DHS of his presence, and failed to comply with the Alien Registration Act" is no different than the determination that the court rejected in *Pastrana-Beltran*.  There, the court found that:

> The problem is that a per se determination of this sort—on his status alone, rather than any assessment of the factors listed on the form—comports not with 1226(a), but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A) for any noncitizens who entered the U.S. without inspection however long ago. . . . [This] threatens a ping pong approach to Petitioner's liberty that is constitutionally untenable.

*Pastrana-Beltran*, 2026 WL 1398609, at *2 (citing *Inestroza Carbajal v. Frazier*, No. 26-cv-2778, 2026 WL 1309265 at *4 (E.D.N.Y. May 12, 2026)).  The result is the same here.  Whether Petitioner had alerted DHS or complied with the Alien Registration Act, using his status in this way is an improper application of Section 1226(a)'s requirements.

Taken together, Petitioner was denied due process because ICE's initial custody determination was inadequate, thereby rendering his detention invalid.  *See Pastrana-Beltran*, 2026 WL 1398609, at *2–3 (granting habeas relief and ordering petitioner's release because the government "did not apply the test [Section] 1226(a) requires, and which the [initial custody determination] form itself instructs"); *Lopez Benitez*, 795 F. Supp. 3d at 497 (granting habeas relief and ordering petitioner's release "given the nature of the constitutional violation [he]

10

sustained" by the government's failure to properly conduct an "individualized assessment before detaining him").

Turning to the third and final *Mathews* factor, "the Attorney General's discretion to detain individuals under [8 U.S.C. § 1226(a)] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025). Here, however, for the reasons already stated, the government has failed to demonstrate that Petitioner is, in fact, a flight risk. Accordingly, it has failed to show a significant interest in his continued detention.

## CONCLUSION

For these reasons, Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus, ECF No. 1, is GRANTED.

The government is directed to immediately release Petitioner from custody and is further directed to certify compliance with the Court's Order by filing a letter on the docket no later than 5:00 p.m. on May 30, 2026. The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing by clear and convincing evidence that his detention is authorized under Section 1226(a). This Order includes "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return petitioner to "the status quo ante").

For the avoidance of doubt, nothing in this Order shall be construed as a determination of the lawfulness of the government's right to detain Petitioner in the future pursuant to proper application of the procedures in 8 U.S.C. § 1226(a), nor shall anything herein be construed as to preclude the government from holding a burden-shifted hearing if it seeks to detain Petitioner in the future. *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at \*7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

/s/Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
May 29, 2026

12